ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
MICHAEL JETTE
Assistant U.S. Attorney
State Bar No. 021843
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: Michael.jette@usdoj.gov
Attorneys for Plaintiff

FILED
2018 SEP -5 PM 5: 22
CLERK US DISTRICT COURT
DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JAS (DTF)

CR18-1786TUC

| United States America, | |
|---|---|
| Plaintiff, | INDICTMENT |
| vs. | VICTIM CASE |
| MICHAEL FEINBERG,<br>BETSY FEINBERG, | Violations: |
| Defendants. | 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)<br>Count 1 |
| | 18 U.S.C. § 1343 (Wire Fraud)<br>Counts 2 and 3 |
| | 18 U.S.C. §371 (Conspiracy to Commit Securities Fraud)<br>Count 4 |
| | Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5 (Securities Fraud)<br>Counts 5 - 16 |
| | 18 U.S.C. §§ 981 and 982<br>Forfeiture Allegation |

**GRAND JURY CHARGES:**

**Scheme to Defraud
And To Sell Unregistered Securities**

At all relevant times in this indictment, the following facts are alleged:

1. During approximately 1997 and continuing through March 7, 2014, in the District of Arizona and elsewhere, the defendants, **MICHAEL FEINBERG** and **BETSY**

**FEINBERG**, willfully sold unregistered securities, and knowingly and with the intent to defraud, engaged in a scheme to defraud various investors. The defendants also participated in the scheme to defraud such investors based on material false representations and the intentional concealment of material facts. The defendants knew that various statements made as part of their scheme to defraud were false.

2. **Michael Feinberg** and **Betsy Feinberg** while living in New York, owned and operated a company called Catharon Productions, Inc. (According to a Catharon Software Corporation (Catharon) offering memorandum dated March 25, 2002, Catharon is the successor in interest to Catharon Productions.) **Betsy Feinberg** was the Chief Executive Officer of Catharon Productions, and **Michael Feinberg** was its President and Treasurer. **Michael Feinberg** and **Betsy Feinberg** were the majority shareholders of Catharon Productions and Catharon.

3. Catharon was organized as a Delaware corporation on March 8, 2002. From March 25, 2002 through at least June 2014, **Betsy Feinberg** was a Director and the Chief Executive Officer of Catharon. **Michael Feinberg** was a Director and the President and Treasurer of Catharon. From 2002 to mid-2013, **Michael Feinberg** and **Betsy Feinberg** operated Catharon from Sedona, Arizona, where they lived. In 2013, **Michael Feinberg** and **Betsy Feinberg's** home in Sedona was foreclosed upon. From mid-2013 to at least February 2015, **Michael Feinberg** and **Betsy Feinberg** operated Catharon from Tucson, Arizona.

4. **Michael Feinberg** and **Betsy Feinberg's** fraud arose from their sale of unregistered securities, Catharon stock. At no time did **Michael Feinberg** and **Betsy Feinberg** register with Securities and Exchange Commission any securities relating to Catharon.

5. From December 2002 to March 2014, **Michael Feinberg** and **Betsy Feinberg** raised $5,001,559.00 by selling unregistered shares of stock in Catharon to investors while **Michael Feinberg** and **Betsy Feinberg** resided in Sedona (2002-2013) and Tucson (2013-2014). **Michael Feinberg** and **Betsy Feinberg** represented that they

had created and Catharon owned a patented computer language technology they first called "TenCORE Net" and then later called "VΔDelta." **Michael Feinberg** and **Betsy Feinberg** falsely claimed that Catharon's technology "represents the first major breakthrough in computer languages in thirty years," "VΔDelta has several major advantages over all other languages," and "There is no competition because all existing development environments lack key elements...." **Michael Feinberg** and **Betsy Feinberg** represented that their technology would enable Catharon to compete with Microsoft.

*Catharon Productions and Catharon:*

6. **Michael Feinberg** and **Betsy Feinberg** used Catharon Productions to make private placement offerings to investors in at least 1997, 1999, and 2000. In the 1999 and 2000 private placement offerings for Catharon Productions, **Michael Feinberg** and **Betsy Feinberg** represented to investors that:

> Catharon Productions had created a software system called TenCORE Net that, 'given adequate financial resources and successful marketing, will allow it to compete in the market with microcomputer operating systems manufacturers, such as Microsoft and Sun Microcomputers;' 'TenCORE Net is currently performing up to its expectations;' and 'The Company's ability to realize sufficient cash flow to cover its overhead for the next 12 months is dependent primarily upon the extent to which TenCORE Net is accepted by Internet users as an alternative to established programming languages.'

7. After forming Catharon in 2002, **Michael Feinberg** and **Betsy Feinberg** induced the victims to invest by repeatedly and falsely representing from at least 2002 through 2013 that (i) Catharon would launch its technology within months of the investors' investment, (ii) Catharon would generate $2 billion in revenue within 3 years, and (iii) investors would receive significant returns on their investments, i.e., between 400% and 2,268%. At the time **Michael Feinberg** and **Betsy Feinberg** made these material false representations they knew such representations were false because Catharon never had the capability of launching its technology nor the ability to generate these significant revenues or returns on investments. **Michael Feinberg**

and **Betsy Feinberg** never launched Catharon's purported technology. Additionally, **Michael Feinberg** and **Betsy Feinberg** never had any reasonable factual basis for the projected launch dates, the projected $2 billion revenue figure and the enormous investment returns, or their representations that Catharon would compete with Microsoft and similar companies.

8. **Michael Feinberg** and **Betsy Feinberg** made similar materially false representations to investors that the technology would enable their company to compete with Microsoft and that it was "currently performing up to its expectations;" and the implied misrepresentation that, to generate sufficient cash flow to cover its overhead, their company would release its technology within 12 months in each of their subsequent private placement offering memoranda for Catharon in 2002, 2003, 2008, 2010 and 2013.

9. Additionally, Michael Feinberg and Betsy Feinberg failed to disclose to investors in each of the above offering memoranda from 2003 to 2013 that the company had never been able to previously meet any of its projected launch deadlines.

10. **Michael Feinberg** and **Betsy Feinberg** misused the investors' monies, which were deposited into Catharon's bank account, to pay their own personal living expenses and support their own lavish lifestyle. **Michael Feinberg** and **Betsy Feinberg** paid themselves salary of $374,990 from 2009 to 2014. In addition to salary, **Michael Feinberg** and **Betsy Feinberg** transferred at least $858,185.99 of investor money to themselves.

*2002 Offering:*

11. In Catharon's 2002 offering, **Michael Feinberg** and **Betsy Feinberg** defrauded six investors of $160,000. The offering materials falsely represented to investors that Catharon was seeking a "final round" of $6 million in investments to assist the company in bringing TenCORE Net to market "within ten months." **Michael Feinberg** and **Betsy Feinberg** stated in subsequent offering years that the respective year's offering was the "final round" of funding:

> May 14, 2003 Business Plan: "We are seeking a final round of $3 million to assist us in bringing our consumer-licensed product to the general market within six months of receipt of funding."
>
> December 1, 2008 Business Plan: "[W]e are seeking a final round of $750,000 to assist us in bringing our consumer-licensed product to the general market within five months of receipt of funding."
>
> April 5, 2013 Business Plan: "[W]e are seeking a final round of $500,000 to assist us in bringing our consumer-licensed product to the general market within eight months of receipt of funding."

12. The 2002 offering materials projected a ten-month launch date for TenCORE Net. However, **Michael Feinberg** and **Betsy Feinberg** failed to disclose that they had previously represented to investors that they would launch the software in 1999, 2000 or 2001, but that they had failed to meet those projected launch dates.

13. The 2002 offering materials also created the false impression that a launch date for TenCORE Net would happen soon by falsely representing to investors, "The software product, TenCORE Net, is finished, not in R&D," "TenCORE Net is currently performing up to its expectations," and "We are seeking funding to cover marketing and to complete documentation and tutorials."

14. **Michael Feinberg** and **Betsy Feinberg** also falsely represented to investors in the 2002 offering (and each subsequent offering) that Catharon's technology would enable it to compete with Microsoft. Having failed since at least 1999 to launch their software and having no experience running any company similar to Microsoft, **Michael Feinberg** and **Betsy Feinberg** had no reasonable factual basis for this representation.

*2003 Offering:*

15. **Michael Feinberg** and **Betsy Feinberg** defrauded 81 investors of $2,346,809.00 with Catharon's 2003 offering. In the 2003 offering materials, **Michael Feinberg** and **Betsy Feinberg** represented to investors:

> We are seeking a final round of $3 million to assist us in bringing our consumer-licensed product to the general market within six months of receipt of funding;
>
> The software product, TenCORE Net, is finished, not in R&D;
>
> TenCORE Net is currently performing up to its expectations…; and
>
> TenCORE Net would enable Catharon to compete with Microsoft.

16. For the same reasons these representations were false in the 2002 offering, **Michael Feinberg** and **Betsy Feinberg's** representations were also false in the 2003 offering. With respect to the projected six-month launch date for TenCORE Net, **Michael Feinberg** and **Betsy Feinberg** omitted to disclose their failures to meet previously projected launch dates going back to at least 1999. Those undisclosed failures to launch TenCORE Net seriously undermined **Michael Feinberg** and **Betsy Feinberg's** representation that they would launch the software within six months of funding of the 2003 offering.

17. In the 2003 offering materials, **Michael Feinberg** and **Betsy Feinberg** also falsely represented to investors that Catharon expected to provide a 1,572% return to investors within 5 years. **Michael Feinberg** and **Betsy Feinberg** had no factual basis to project a 1,572% return for investors given the absence of any historical revenue or profit figures for Catharon.

*2008 Offering:*

18. **Michael Feinberg** and **Betsy Feinberg** defrauded 24 investors of $1,281,250.00 with Catharon's 2008 offering. Similar to what they misrepresented in the 2002 and 2003 offerings, in the 2008 offering **Michael Feinberg** and **Betsy Feinberg** falsely represented to investors:

> We are seeking a final round of $750,000 to assist us in bringing our consumer-licensed product to the general market within five months of receipt of funding;
>
> The software product, VΔDelta, is finished, not in R&D;
>
> VΔDelta is currently performing up to its expectations…; and

VΔDelta would enable Catharon to compete with Microsoft.

19. Again, **Michael Feinberg** and **Betsy Feinberg** omitted and failed to disclose their repeated failures since at least August 1999 to launch the technology.

20. In the 2008 offering materials, **Michael Feinberg** and **Betsy Feinberg** also lied to investors stating that Catharon would provide a 2,268% return to investors within 3 years. This projection was even more wild and baseless than the previous projection of a 1,572% return for investors.

*2010 Offering:*

21. **Michael Feinberg** and **Betsy Feinberg** defrauded 63 investors of $1,108,500.00 with Catharon's 2010 offering. Similar to what they misrepresented in the 2002, 2003 and 2008 offerings, in the 2010 offering **Michael Feinberg** and **Betsy Feinberg** falsely represented to investors:

> VΔDelta is currently performing up to its expectations...;
>
> Not only are we less than a year from revenue, we are less than a year from profitability and the payment of dividends;
>
> [W]e do expect to release and start the dividends flowing in 2011;
>
> We're so excited! After all these months of preparation, we are scheduled to launch VΔDelta on December 16 of this year; and
>
> VΔDelta would enable Catharon to compete with Microsoft.

22. Again, **Michael Feinberg** and **Betsy Feinberg** omitted and failed to disclose their repeated failures since at least August 1999 to launch the technology.

*2013 Offering:*

23. **Michael Feinberg** and **Betsy Feinberg** defrauded 7 investors of $105,000 with Catharon's 2013 offering. Similar to what they misrepresented in the 2002, 2003, 2008, and 2010 offerings, in the 2013 offering **Michael Feinberg** and **Betsy Feinberg** falsely represented to investors:

>We are seeking a final round of $500,000 to assist us in bringing our consumer-licensed product to the general market within eight months of receipt of funding;
>
>VΔDelta is currently performing up to its expectations…;
>
>VΔDelta would enable Catharon to compete with Microsoft; and
>
>A projected return on investment of 668%.

24. Again, **Michael Feinberg** and **Betsy Feinberg** omitted and failed to disclose their repeated failures since at least August 1999 to launch the technology.

*Employees:*

25. Employee W.C. described Catharon's software as "a heap of junk." He said it was "not fit for purpose" and had "no basis for functionality as a usable program." W.C. criticized **Michael Feinberg** and **Betsy Feinberg** "for making promises to investors that they would never be able to keep." W.C. further stated that once **Michael Feinberg** and **Betsy Feinberg** "got money from an investor, they'd keep trying to wheedle more money out of them," and they boasted at staff meetings about doing so.

26. Employee R.O. was a software tester from October 2011 to November 2012. R.O. wrote programs in VΔDelta to test the software's lower-level features. He said the tests were "at a simplified level," and "A lot worked but a lot did not work." During R.O.'s interview, the Securities Division informed him about the statements in Catharon's offering materials dating back to 2002 that represented the software was "finished, not in R & D" (research and development). R.O. said that throughout his employment in 2011 and 2012 VΔDelta was still in development.

*Patents:*

27. Further, in making an investment offering in April 2013, **Michael Feinberg** and **Betsy Feinberg** continued to falsely represent that Catharon held two patents concerning VΔDelta, although in January and February 2013 they had assigned Catharon's ownership of the patents to a third party without disclosing that

assignment to investors.

28. The purported value and potential of Catharon's patented VΔDelta technology were central to Catharon's unregistered stock offering. According to the 2013 Offering Memorandum and Business Plan, Catharon's primary revenue source would come from "the low cost, high volume licensing of VΔDelta...." The 2013 Business Plan projected that Catharon's licensing of VΔDelta would generate $2 billion in revenue within 3 years.

29. In the 2013 Offering Memorandum **Michael Feinberg** and **Betsy Feinberg** continued to lie to and mislead investors stating that Catharon expects "intense competition from Microsoft, Sun Microsystems and others." The 2013 Business Plan, also, falsely represented to investors, "The four-year technology lead coupled with the two [P]atents create a formidable barrier to entry for prospective competitors."

30. The 2013 Business Plan further discussed the Patents' role in protecting the VΔDelta technology and investors' investments in Catharon: "These [P]atents effectively preclude competitors from introducing software products and services that make unlicensed use of these proprietary techniques."

31. When **Michael Feinberg** and **Betsy Feinberg** made the foregoing representations in the April 5, 2013 offering materials, the Patents no longer belonged to Catharon. On January 9, 2013, Catharon assigned to a third party "[A]ll right, title and interest in, and to the Patents" according to a Patent Assignment and Revenue Share Agreement ("Patent Assignment") that **Betsy Feinberg** executed that date.

32. As an essential part of and in furtherance of the defendants scheme to defraud, the defendants' caused to be issued interstate wire transfers when various victims wired their investment funds to bank accounts controlled by the defendants.

## Count 1
## Conspiracy to Commit Wire Fraud
### [Title 18 U.S.C. § 1349]

33. The factual allegations in paragraphs 1 through 32 of this indictment are re-alleged and incorporated by reference as if fully set forth herein.

34. From on or about 1997 and continuing through March 7, 2014, in the District of Arizona and elsewhere, the defendants **MICHAEL FEINBERG** and **BETSY FEINBERG (dba Catharon Software Corporation)**, conspired, confederated and agreed with each other to knowingly engage in and execute an ongoing scheme to defraud various persons, and to obtain money, funds, credits or other property owned by or under the custody or control of such persons, by means of materially false or fraudulent pretenses, representations and the intentional concealment of material facts, in violation of Title 18, U.S.C. § 1343, Wire Fraud.

## The Purpose of the Conspiracy

35. The purpose of the conspiracy was for the defendants to unlawfully enrich themselves by obtaining investments derived from the defendants' scheme to defraud all in violation of Title 18, U.S.C. §1349, Conspiracy to Commit Wire Fraud.

## Counts 2 and 3
## Wire Fraud
### [Title 18 U.S.C. § 1343]

36. The factual allegations in paragraphs 1 through 32 of this indictment are re-alleged and incorporated by reference as if fully set forth herein.

37. On the dates alleged below, in the District of Arizona and elsewhere, the defendants, **MICHAEL FEINBERG** and **BETSY FEINBERG (dba Catharon Software Corporation)**, willfully and knowingly executed, or attempted to execute, a scheme or artifice to defraud (1) to obtain any money or property by materially false or fraudulent pretenses, representations, or promises, and the intentional

concealment of material facts or willfully participated in such a scheme with knowledge of its fraudulent nature; (2) that **MICHAEL FEINBERG** and **BETSY FEINBERG (dba Catharon Software Corporation)**, acted with the intent to defraud; and (3) in advancing, furthering, or carrying out an essential part of the scheme, **MICHAEL FEINBERG** and **BETSY FEINBERG (dba Catharon Software Corporation)**, transmitted and caused to be transmitted any writing, signal, or sound by means of a wire communication in interstate commerce that is, banking wire transfers relating to the monetary losses set out below:

| Count | Date | Amount | Receiving Account | Investor |
|---|---|---|---|---|
| 2 | October 4, 2013 | $5,000 | xxxx6162 | J.H. |
| 3 | March 7, 2014 | $25,000 | xxxx6162 | L.G. |

All in violation of Title 18, United States Code, Section 1343.

### Count 4
### Conspiracy to Commit Securities Fraud
### [Title 18 U.S.C. §371]

38. The factual allegations in paragraphs 1 through 32 of this indictment are re-alleged and incorporated by reference as if fully set forth herein.

39. From on or about 1997 and continuing through March 7, 2014 in the District of Arizona and elsewhere, the defendants **MICHAEL FEINBERG** and **BETSY FEINBERG (dba Catharon Software Corporation)**, knowingly and willfully conspired, confederated and agreed with each other to commit offenses against investors, namely violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### The Purpose of the Conspiracy

40. The purpose of the conspiracy was for the defendants to unlawfully enrich themselves by obtaining investments derived from the defendants' scheme to defraud in connection with their sale of unregistered securities in violation of Title

15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5. In furtherance of the conspiracy and to effect the objects of the conspiracy the defendants committed various overt acts as outlined in the introductory paragraphs of the indictment, all in violation of Title 18, United States Code, Section 371.

**Counts 5 - 16**
**Securities Fraud**
**[Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5]**

41. The factual allegations in paragraphs 1 through 32 of this indictment are re-alleged and incorporated by reference as if fully set forth herein.

42. On the dates alleged below, in the District of Arizona and elsewhere, the defendants, **MICHAEL FEINBERG** and **BETSY FEINBERG (dba Catharon Software Corporation)**, knowingly and willfully, directly and indirectly, by the use of means and instrumentalities of interstate commerce, and of the mails, would and did use and employ, in connection with the purchase and sale of stock in Catharon, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of conduct which operated and would operate as a fraud and deceit upon any persons, including members of the investing public and purchasers of Catharon's securities, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; as set out below:

| Count | Date | Amount Defendant Ledger and Bank Statements | Receiving Account | Investor |
|---|---|---|---|---|
| 5 | 10-5-2012 | $50,000 | xxxx6162 | B.L. |

| 6 | 11-2-2012 | $105,000 | xxxx6162 | R.H. (Equity Trust) |
| --- | --- | --- | --- | --- |
| 7 | 1-31-2013 | $10,000 | xxxx6162 | D.C. |
| 8 | 3-11-2013 | $10,000 | xxxx6162 | M.M. |
| 9 | 3-13-2013 | $10,000 | xxxx6162 | D.C. |
| 10 | 4-1-2013 | $15,000 | xxxx6162 | J.V. |
| 11 | 4-24-2013 | $5,000 | xxxx6162 | J.S. and C.S. |
| 12 | 5-28-2013 | $5,000 | xxxx6162 | R.H. and J.H. |
| 13 | 7-29-2013 | $25,000 | xxxx6162 | A.B. |
| 14 | 7-30-2013 | $25,000 | xxxx6162 | P.E. and P.E. |
| 15 | 10-4-2013 | $5,000 | xxxx6162 | J.H. |
| 16 | 3-7-2014 | $25,000 | xxxx6162 | L.G. |

## FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Counts 1 through 16 of this Indictment, the defendants, MICHAEL FEINBERG and BETSY FEINBERG, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 1349, Conspiracy to Commit Wire Fraud; Title 18, United States Code, Section 1343, Wire Fraud; Title 18, United States Code, Section 371, Conspiracy to Commit Securities Fraud; and Title 15, United States Code, Section 78ff, Securities Fraud; and

Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1343 and 1349 as set forth in Counts 1 through 3 of this Indictment, the defendants, MICHAEL FEINBERG and BETSY FEINBERG, shall forfeit to the United

States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations.

The property to be forfeited includes, but is not limited to, the following: A sum of money equal to the amount of proceeds obtained as a result of the offenses, in an amount not less than $5,001,559.00 in United States currency.

If any of the property described above, as a result of any act or omission of the defendants: a) cannot be located upon the exercise of due diligence; b) has been transferred or sold to, or deposited with, a third party; c) has been placed beyond the jurisdiction of the court; d) has been substantially diminished in value; or e) has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the above forfeitable property, including, but not limited to, all property, both real and personal, owned by the defendants.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2)(A), Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/S/
_____
Presiding Juror

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

/S/

Assistant U.S. Attorney

**REDACTED FOR PUBLIC DISCLOSURE**

SEP 05 2018