# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-01786-001-TUC-JAS (DTF) |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Feinberg, et al., | |
| Defendants. | |

<u>Jury Issues</u>

In light of the continuing COVID-19 pandemic, the District of Arizona instituted special measures and precautions pertaining to jury trials. To allow for proper social distancing, the Jury Room can only accommodate up to 56 jurors, and the largest Courtroom in Tucson (i.e., the Special Proceeding Courtroom) can only accommodate up to 38 jurors. The jury in this case will consist of 14 jurors (i.e., 12 jurors and two alternates). In order to limit the number of jurors physically coming to Court for voir dire, the Court directed the Jury Commissioner to send questionnaires to 250 prospective jurors. As of the date of this Order, 187 jurors responded to the questionnaires. The purpose of the questionnaires was to allow the Court and the parties to determine prior to trial whether we could narrow the list to approximately 56 jurors who have no issues with impartiality and fairness, and otherwise would not be excused by this Court at trial as they could not be impartial, or had a financial, health, or other personal hardship.

The Court has reviewed the entirety of the 187 questionnaires[1], and finds that the following jurors appear fair and impartial, and are not subject to dismissal from the jury for financial, health, or other personal hardships (Juror Numbers follow – there are 59):  6, 19, 25, 26, 57, 68, 71, 75, 78, 92, 94, 110, 111, 121, 140, 192, 214, 231, 237, 277, 282, 328, 357, 366, 388, 394, 396, 420, 425, 430, 440, 449, 492, 533, 546, 562, 618, 627, 667, 734, 737, 757, 766, 767, 776, 795, 800, 802, 826, 827, 875, 904, 911, 922, 928, 970, 998, 1009, 1016.

The Court will direct the Jury Commissioner to summon 56 jurors (from the list above) for voir dire unless the parties can offer a valid reason why these jurors should not be summoned.

As to all of the jurors not listed above, a review of the questionnaires reflects that the Court would excuse them at trial (and the parties would likely stipulate to excusing them at trial) as they could not be fair and impartial, or are subject to dismissal for financial, health, or other personal hardships.  *See*  28 U.S.C. § 1866(c) ("[A]ny person summoned for jury service may be . . . excused by the court [due to] . . . undue hardship or extreme inconvenience . . . [or are] unable to render impartial jury service . . .").

The process at issue is necessary in light of the unprecedented circumstances surrounding the COVID-19 pandemic; the special measures and precautions at issue are necessary to mitigate risks to the public, the parties and counsel, and Court employees. The jurors that are not being called to personally appear for voir dire would otherwise be excused by this Court in any event at trial (as they would simply orally repeat their written reasons justifying dismissal during voir dire), and the parties would likely stipulate to their dismissal based on valid reasons reflected in 28 U.S.C. § 1866(c).

The Court will hear from the parties at the pretrial conference as to these jury issues, but as referenced above, their focus should be on the juror numbers identified by the Court.

---

[1] The Court notes that subsequent to the questionnaires being returned by the jurors, the District of Arizona lifted the Court's mask mandate.  As such, the Clerk's Office contacted the jurors again to see if they had any concerns regarding the lifting of the mandate; the deadline to email any concerns back to the Court was March 21, 2022.  The Court has also reviewed those emails (which have also been provided to the attorneys – along with the original questionnaires) in determining who would be an appropriate juror in this case.

Jury Instructions

The Court has reviewed all of the jury instructions submitted by the parties. *See* Doc. 132. As to all of the stipulated jury instructions, they are appropriate for trial, and they will be used by the Court at trial. There are only two disputed jury instructions, and there is only one primary dispute as to the two instructions. *See* Doc. 132 at pages 56-61. Defendants seek to include an "overt act" requirement as to conspiracy to commit wire fraud; however, as the Government correctly argues, an "overt act" is not required for conspiracy to commit wire fraud (*see* Doc. 56 at p. 57, line 10-12 and Doc. 56 at p. 58, lines 2-5. As such, Defendants' objection is overruled and the two disputed instructions advanced by the Government will be used at trial. *See* Doc. 132 at pages 56-61.[2]

Verdict Forms

The stipulated verdict forms are appropriate and will be used at trial. *See* Doc. 130. However, the Court notes that at page 4 (lines 5-9) and page 6 (lines 5-9) of Doc. 130 - there appears to be a typo where a deposit is made from "J.V.G."; the Indictment (Doc. 5 at page 13, line 6) lists "J.V." (not "J.V.G."). As such, the Court will use "J.V." in the verdict forms to coincide with the Indictment.

Voir Dire

The parties' proposed voir dire (Doc. 131) appears appropriate, but it largely overlaps with this Court's standard voir dire and the questionnaire that was sent to the jurors. As such, the Court will not directly ask the parties' proposed voir dire (Doc. 130). Rather, after this Court finishes its standard voir dire, the parties will each be permitted an additional fifteen minutes to ask questions of the jury if they believe it is still warranted.

Motions in Limine

Pending before the Court are several motions in limine: Docs. 109, 110, 111, 122, 123, 126, 127.

As to the motion at Doc. 122, the Government specifically notes that Defendants do

---

[2] The disputed instruction appearing at pages 59-61 will be inserted after page 11 of the stipulated instructions, and the disputed instruction appearing at pages 56-57 will be inserted after page 45 of the stipulated instructions.

not oppose the motion; as such, the unopposed motion at Doc. 122 is granted.

As to the remaining motions, the only written opposition that was filed as to any motion pertains only to Doc. 109. *See* Opposition at Doc. 116. In Doc. 109, the Government correctly argues that there is an abundance of authority showing that Defendants can not blame the victims at trial for falling for fraudulent representations by Defendants in making their investment decisions; thus, the Government seeks to exclude Defendants from arguing that certain victims (such as experienced investors) were negligent in failing to determine that Defendants' representations were unfounded. *See generally United States v. Winkle*, 477 F.3d 407, 418 (6th Cir. 2007) (FDIC report detailing that bank CEO was allowing defendants check kiting scheme to go forward to avoid detection of embezzlement by CEO was properly precluded under Federal Rules of Evidence 401 and 403); *United States v. Thomas*, 377 F.3d 232, 240-41 (2nd Cir. 2004) ("We refuse to accept the notion that " 'the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim' "; defense properly prohibited from cross-examining representative of victim lender about lack of caution and diligence in dealing with defendant); *United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) (precluding evidence that victim lender was negligent in failing to request additional information that may have revealed fraud); *United States v. Coyle*, 63 F.3d 1239, 1244 (3rd Cir. 1995) ("The negligence of the victim in failing to discover the fraudulent scheme is not a defense to criminal conduct."); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991) (excluding evidence of lender's conduct because it "would have improperly shifted the jury's attention away from the knowledge and intent of the [defendant] and focused instead on the beliefs of the victims of the alleged scheme to defraud"); *United States v. Moore*, 923 F.2d 910, 917 (1st Cir. 1991) (approving jury instructions stating: "[I]t is not a defense that the bank might have prevented its losses had it better internal controls or procedures."); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) (rejecting defense based on victim's failure to have taken steps to uncover fraudulent scheme: "The laws protecting against fraud are most needed to protect the careless and the naive from lupine predators,

and they are designed for that purpose."). Defendant argues that the Government opened the door to victim blaming simply because it referenced Doc. 19 (that contained materials about risks and uncertainties in investing) during J.V.G.'s deposition; the Court does not find this argument persuasive, Defendant cites no authority to support such a position, and the argument is rejected. The Government's motion at Doc. 109 is granted.

As to all of the remaining motions in limine appearing at Docs. 110, 111, 123, 126, and 127, the Defendants did not file any written responses opposing these motions.[3] As reflected in the Court's previous Order, the deadline to file any responses to motions in limine expired on March 18, 2022. *See* 104 (Order at p. 4: "Responses to motions in limine are due no later than **Friday, March 18, 2022**.") (emphasis in the original). Untimely responses would violate this Court's Orders, and this Court will enforce its own Orders.[4] Furthermore, the Local Rules provide that the failure to file a timely written response to a motion may be deemed a consent to the granting of the motion and the Court may dispose of the motion summarily. *See* LRCrim 12.1 (incorporating LRCiv 7.2); LRCiv 7.2(b) (parties shall serve and file a memorandum setting forth the points and authorities in support of their position); 7.2(i) (if counsel does not serve and file the required responsive memoranda, such non-compliance may be deemed a consent to the granting of the motion

---

[3] Although the Government conferred with Defendants and summarily noted that Defendants opposed the motions within the Government's own motions in limine, Defendants did not actually file any written oppositions to the motions in limine at issue.

[4] A "district court is given broad discretion in supervising the pretrial phase of litigation, and its decisions regarding the preclusive effect of a pretrial order . . . will not be disturbed unless they evidence a clear abuse of discretion . . . In general, the pretrial scheduling order can only be modified upon a showing of good cause . . . The pretrial schedule may be modified if it cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). "A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril . . . Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." *Id.* at 610. In light of these considerations, "if the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic*, 302 F.3d at 1087. Actions that violate deadlines set in the Court's Scheduling Orders are properly deemed untimely, and may be denied solely on these grounds. *See, e.g., Johnson*, 975 F.2d at 608-09; *U.S. v. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985), *superseded on other grounds*, *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170 (9th Cir. 1996); *Dedge v. Kendrick*, 849 F.2d 1398 (11th Cir. 1988).

and the Court may summarily grant the motion).

In light of the foregoing, the Government's motions in limine appearing at Docs. 110, 111, 123, 126, 127 are summarily granted. In the alternative, the Court has reviewed the points and authorities in the Government's motions, agrees with the Government's position, and therefore the motions appearing at Docs. 110, 111, 123, 126, 127 are also granted on the merits.

Conclusion

Accordingly, IT IS HEREBY ORDERED as follows:

(1)  The Government's motions in limine (Docs. 109, 110, 111, 122, 123, 126, 127) are **granted**.

(2) The Court will proceed at trial as discussed in the text of this Order as to juror issues, jury instructions, verdict forms, and voir dire.

Dated this 22nd day of March, 2022.

Honorable James A. Soto
United States District Judge